UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **AMANDA WATTS,** | * |
| Plaintiff, | * |
|  | *  Case No. 1:21-cv-00589-JRR |
| v. | * |
| **MARYLAND CVS PHARMACY, LLC** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Maryland CVS Pharmacy, LLC's ("CVS") Motion for Summary Judgment (ECF No. 36; the "Motion") and Motion to Strike Errata Sheet of Plaintiff's Expert Akhil Chhatre, M.D. (ECF No. 37; the "Errata Motion"). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

**BACKGROUND**

This action arises out of an alleged improperly administered vaccine by injection. According to Plaintiff, On December 28, 2017, she received an injection of Pneumovax 23 10 cm below the middle of her left bicep. (ECF No. 4, ¶ 8.) Following the injection, Plaintiff experienced pain in her left arm and was eventually diagnosed with complex regional pain syndrome ("CRPS.") *Id.* ¶¶ 11, 14. On December 18, 2020, Plaintiff filed her Complaint in the Circuit Court of Baltimore County; CVS removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) The Complaint asserts a single cause of action for negligence against CVS. (ECF No. 4.) The parties engaged in discovery and designated expert witnesses. Now that discovery has closed, CVS moves to strike the errata sheet of one of Plaintiff's expert

witnesses and for summary judgment on the basis that Plaintiff cannot prove causation relying on the expert's unaltered deposition testimony. The court finds proper evaluation of the Motion necessitates resolution of the Errata Motion; therefore, the court will address the Errata Motion first.

## LEGAL STANDARDS

### I. MOTION TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (2d. ed. 1987)). "However, granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Id.*

### II. MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When

considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## UNDISPUTED MATERIAL FACTS

On December 28, 2017, Plaintiff was administered Pneumovax 23 ("Pneumovax") and Boostrix TDAP ("Boostrix") vaccines by a CVS pharmacist – Maggie Brodsky, R. PH.[1] (Pl.'s Opp'n, Exhibit A, ECF No. 41-2.) According to Plaintiff's immunization records, Pneumovax was injected in her left arm and the administration route is noted as "other;" Boostrix was

---

[1] In 2017, Maggie Brodsky's last name was Mattu, which is reflected in Plaintiff's medical records. The court will refer to Mrs. Brodsky by her current.

administered in her left arm and the administration route is listed as "intramuscular." (Pl.'s Opp'n, Exhibit E, ECF No. 41-6.) Plaintiff testified that she received two injections in the same location with one hole slightly overlapping the other. (Amanda Watts Dep. 57:4- 58:21, 60:1-61:7, ECF No. 41-3.) Specifically, Plaintiff testified:

> A. From what I remember, okay, and this is what I remember, when they vaccinated me, it was vaccinated like this, on top of each other where it was one -- it was two injections literally on top of each other where they overlapped each other like this so it was one hole.
>
> Q. Okay. Let me -- let me see if I can understand this. Are you say you received two needles at the same time?
>
> A. No. What she did, okay, she -- okay. She gave me two shots that day, okay, in the same arm.
>
> Q. Right.
>
> A. When she gave me the first one, she put it in, and then she gave me the second one. But when she gave me the second one, it was on top of the other hole of the first one. They were literally –
>
> Q. When you –
>
> A. -- overlapping like this.
>
> Q. So are you saying that she injected you in the same hole?
>
> THE WITNESS: Can I borrow a piece of paper?
>
> MR. BURNS: That's -- that would be perfect.
>
> MR. SULLIVAN: She's drawing on a piece of paper. And I can scan it in and pull it up if that's helpful.

(Watts Dep. 57:20-59:7.)

4



Plaintiff's Drawing of the site of the injections. (Def.'s Mot., Exhibit 9, ECF No. 36-12.) Plaintiff also testified that she did not know which vaccine was administered first. (Watts Dep. 60:6-13.)

On December 30, 2017, Plaintiff presented to Choice One Urgent care and was examined by nurse practitioner Charlotta Turner, CRNP. (Charlotta Turner Dep., 15:19 – 16:6, ECF No. 36-10.) Ms. Turner testified in deposition that she examined both of Plaintiff's arms and there was only one puncture site despite Plaintiff's immunization records reflecting that she received two separate vaccines. (Turner Dep. 17:7-12.) Ms. Turner further testified that she observed "a large red area around the puncture site that was extremely hot to the touch." *Id.* 17:18-21. Ms. Turner did not document any drawings or photographs of Plaintiff's arm when she was seen on December 30, 2017. *Id.* at 16:2-19:2.

After receiving the vaccines, Plaintiff was seen and treated by a number of doctors and specialists on several occasions between 2018 and 2021. (Pl.'s Resp. to Def.'s Interrog. No. 6.) Plaintiff was eventually diagnosed with CRPS. (Dr. Akhil Chhatre's Report, Pl.'s Opp'n, Exhibit

5

N, ECF No. 41-15.) Although Plaintiff was administered two vaccines, it is undisputed that Plaintiff's claim of negligence pertains to the administration of Pneumovax, not Boostrix. (ECF No. 41 at 1.)

**The Vaccines**

According to the Pneumovax vaccine information sheet, Pneumovax is used to help protect against serious infection (*e.g.,* meningitis, bacteria in the blood) due to certain bacteria (streptococcus pneumoniae). (Def.'s Mot., Exhibit 3, ECF No. 36-6 at 4.) Pneumovax is to be injected into the muscle or under the skin. *Id.* If injected into the muscle, Pneumovax is given in the upper arm or thigh. *Id.* The potential side effects of Pneumovax include: pain, redness, or swelling at the injection site; muscle/joint aches/ or fever; infrequently, temporary symptoms such as fainting/dizziness/lightheadedness, vision changes, numbness or tingling, or seizure-like movements may occur. *Id.*

According to the Boostrix vaccine information sheet, Boostrix is used to maintain immunity against diphtheria, tetanus (lockjaw) and pertussis (whooping cough) in children and adults who have been vaccinated for these diseases in the past. (Def.'s Mot., Exhibit 3, ECF No. 36-6 at 1.) Boostrix is usually injected into a muscle of the upper arm. *Id.* The potential side effects of Boostrix include: pain, swelling, or redness at the injection site, headache, tiredness, body aches, nausea, diarrhea, fever, chills, vomiting, or sore/swollen joints. *Id.*

Both the vaccine information sheet for Pneumovax and Boostrix indicate that temporary, uncommon symptoms such as fainting/dizziness/lightheadedness, vision changes, numbness or tingling, or seizure-like movements may occur. (ECF No. 36-6 at 1 and 4.) Both vaccine information sheets indicate that a very serious allergic reaction is rare, but a patient should seek

6

immediate medical attention if she notices rash, itching/swelling (especially in the face/tongue/throat), severe dizziness, or trouble breathing. *Id*

**Experts**

***Karen M. Ryle, M.S., R.Ph.***

Ms. Ryle is a registered pharmacist designated by Plaintiff as a standard of care expert. (Def.'s Mot., Exhibit 13, ECF No. 36-16 at 1.) Ms. Ryle's report states:

> To comply with the standard of care when administering a vaccine intramuscularly, you locate the deltoid muscle in the upper arm, in adults, this can be done by lining up 2-3 fingers at the top of the bone in the shoulder and/or by placing the thumb under the armpit and the 2 fingers on the deltoid muscle. The injection should always be above the armpit and below the acromion process.

(Ryle Report at 4.)

Ms. Ryle opined that "[a]ccording to the photograph of Amanda Watt's [sic] injection site, the Pneumovax vaccine was administered well below the deltoid muscle which led to a physical injury." *Id.* at 5. Ms. Ryle further opined that

> . . . within a reasonable degree of medical certainty . . . CVS, through their pharmacist's action of improper injection technique and wrongful administration of pneumococcal injection below the deltoid muscle, breached the standard of care and caused injury to Ms. Watts.

*Id.* at 6. The Ryle Report does not contain an opinion regarding the applicable standard of care for administration of Boostrix.

Ms. Ryle testified in deposition that it would not be a breach of the standard of care to inject both Pneumovax and Boostrix into the same arm:

> A. Well, that's why they recommend actually giving the vaccines in two different arms, because then you'll know what the reaction is, if it's either the Boostrix or the Pneumovax. So that is the standard protocol if you're giving two vaccines. They can be given in the same arm, but it's a little bit more difficult to give an IM in the same

7

>arm, because you're only dealing with a small area in the deltoid muscle and they should be an inch apart . . . .
>
>Q. And if a patient requests that both vaccinations be given in the same arm, that would still meet the CDC standard of care; correct?
>
>A. Correct.
>
>Q. And the CDC does allow for the administration of more than one vaccine in the same arm at the same time?
>
>A. Correct.

(Ryle Dep. 25:21-26:8 and 27:1-8.)

Ms. Ryle also testified that she would amend her report because she did not initially understand that Plaintiff received both Pneumovax and Boostrix:

>A. I did not know they were both administered on the same day or the same time, until I received the information that Mr. Sullivan forwarded to me last week.
>
>Q. Okay. Does that information on the Boostrix shot being administered at the same time influence or change your opinions in any way?
>
>A. No.
>
>A. So I would amend the report that it would be either the Boostrix or the Pneumovax administration into her arm that caused the damage. But it would be either/or, I don't know for certain which one it was.
>
>Q. You would defer to Dr. Chhatre on that --on that issue of medical causation?
>
>A. Are you asking me?
>
>Q. Yes. Would you defer to Dr. Chhatre?
>
>A. I just know that I, as a pharmacist, cannot be a causation expert, so I have to defer to whoever the causation expert is going to be in this case.

*Id.* at 42:5-16 and 43:7-19.

***Jill A. Morgan, PharmD, BCPS, BCPPS***

Dr. Morgan is a Doctor of Pharmacy who is board certified as a pharmacotherapy specialist and as a pediatric pharmacotherapy specialist. (Jill A. Morgan Report, ECF No. 36-14 at 1.) CVS designated Dr. Morgan as its standard of care expert. Dr. Morgan opined that on December 28, 2017, the pharmacist, Ms. Brodsky, met the standard of care when administering the two vaccines to Plaintiff. *Id.* at 2. Specifically, Dr Morgan's Report explained:

> Pneumovax 23 can be administered IM or subcutaneously. Boostrix should be administer [sic] as an IM injection as documented. It is the standard of care to administer these 2 immunizations in the same arm. There is no issue with a patient receiving these 2 immunizations on the same day in the same arm. Further, the location of the injections met the standard of care.

*Id.*

Dr. Morgan testified that she originally thought Plaintiff received Pneumovax by way of subcutaneous injection. Upon learning that Plaintiff received the injection intramuscularly, her opinions did not change with respect to the standard of care. (Dr. Morgan Dep. 20:11-21:6.)

Dr. Morgan rebutted Plaintiff's expert, Ms. Ryle, as follows:

> In the letter from Karen Ryle, MS, RPh, she discussed the Pneumovax 23 immunization and fails to consider that Amanda Watts also received the Boostrix (Tdap) immunization on the same day, which could explain her arm pain and swelling.

*Id.* at 3.

***Akhil Chhatre, M.D.***

Dr. Chhatre is board certified by the American Board of Physical Medicine and Rehab, and licensed to practice medicine in the State of Maryland. (Dr. Chhatre Report at 1.) Dr. Chhatre's clinical practice is focused on treating patients with non-surgical pain-management techniques,

9

including treatment of CRPS. *Id.* Plaintiff has been a patient of Dr. Chhatre since July 17, 2018. Plaintiff designated Dr. Chattre as a causation and damages expert. (ECF No. 36-16 at 2.)

Dr. Chhatre's report states:

> Ms. Watts suffers from Complex Regional Pain Syndrome, which causes her prolonged severe pain in her left arm, neck, and other areas of her body, as well as numbness, tingling, and burning sensations . . . .
>
> Based on my evaluation of Ms. Watts, my review of her medical records, and my training, experience, and education, it is my opinion to a reasonable degree of medical certainty that the administration of the pneumovax vaccine was the proximate cause of the injuries described above.
>
> I considered other potential causes of her injuries but nothing else remarkable occurred around the time of the onset of her symptoms that could reasonably explain her injuries. The administration of the pneumovax vaccine into the arm cavity below the deltoid (as opposed to into the muscle) is the most likely cause of her injuries.

(Chhatre Report at 1.) Dr. Chhatre's report did not include any opinions regarding Boostrix.

At deposition, Dr. Chhatre testified:

> Q. In this case Ms. Watts testified that at the same time she received the Pneumovax vaccine in the same -- exact same location, she received a Boostrix injection. How do you know the Boostrix injection didn't cause any complex regional pain syndrome in her?
>
> A. It was a -- can you tell me more about that. Sorry.
>
> Q. Well, first, did you know at the same time Ms. Watts was given the Pneumovax vaccine that she was given a Boostrix vaccine as well?
>
> A. I may have known that.
>
> Q. Okay. She testified that those two vaccines were given at the same time in the same exact location, one after the other. How do you know that it wasn't the Boostrix vaccine that caused it?
>
> A. I couldn't -- if the location was the exact same, through the exact same hole in the skin, then it would be difficult for me to tell.

> Q. What if they were given slightly apart would you be able to tell which needle had caused the complex regional pain syndrome?
>
> A. Yes. Whichever one was the site of which there was the focus of residual pain and redness. I think you said she had it for a week or two weeks or something?
>
> Q. Right. But what -- so you are saying that the one that caused the original swelling and redness would be most likely to cause?
>
> A. If prolonged. Like if it lasted a week, like you had mentioned, that would be my first suspicion.
>
> Q. So if it was indeed the Boostrix that led to her initial swelling and redness and pain, that would be what you would most likely attribute to causing the complex regional pain syndrome?
>
> A. Repeat that.
>
> Q. Sure. If it was the Boostrix and not the Pneumovax that caused the initial swelling in her arm, the pain and the initial swelling, it would be that shot that you would believe most likely caused or led to the complex regional pain syndrome?
>
> A. I mean, again, it would have to be based off of location and where that site – we'd have to somehow be able to identify the difference in location and which of those locations had the residual pain and swelling. So there's a couple degrees of hypotheticals.
>
> Q. Right. But if they were given in the same hole, you wouldn't be able to tell which -- or if they were given let's say the sixteenth of an inch apart, you wouldn't be able to tell which shot had damaged the nerves that led to the complex regional pain syndrome?
>
> A. It would be the one that was left with the residual redness and warmth for a week.

(Dr. Chhatre Dep. 71:1-72:12, 72:19-73:20.)

Following his deposition, Dr. Chhatre submitted an errata sheet regarding page 71, line 21 of his deposition testimony. Dr. Chhatre, by way of his errata sheet, added: "if both shots were

11

given in the same or similar, improper location, the Pneumovax would have contributed to her injuries." (Pl.'s Opp'n, Exhibit O, ECF No. 41-16.)

## ANALYSIS

### I.  ERRATA MOTION

CVS moves to strike Dr. Chhatre's errata sheet. (ECF No. 37-1 at 5.) Under Federal Rule of Civil Procedure 30(e), a deponent is permitted to review his deposition transcript and, "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." FED. R. CIV. P. 30(e). As the Honorable Catherine Blake of this court explained:

> The Fourth Circuit has not opined on the permissible scope of alterations under the rule, and while "[a] majority of courts interpret Rule 30(e) literally to allow any timely, substantive change for which a reason is given[,]" this court has followed a "growing minority [that] recognizes limitations to the scope of permissible changes to deposition testimony[.]" *Harden v. Wicomico Cnty.,* 263 F.R.D. 304, 307-08 (D. Md. 2009); *see also Wyeth v. Lupin Ltd.,* 252 F.R.D. 295, 296-97 (D. Md. 2008); *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 267-68 (3d Cir. 2010); *Brittney Gobble Photography, LLC v. Sinclair Broadcast Grp., Inc.*, No. SAG-18-3403, 2020 U.S. Dist. LEXIS 25576, 2020 WL 761174, at *4 (D. Md. Feb. 14, 2020). This district has distinguished between substantive changes that "correct misstatements or clarify existing answers" and those that "materially change the answers or fully supplant them," permitting the former and barring the latter. *Green v. Wing Enters., Inc.*, No. 1:14-CV-01913-RDB, 2015 U.S. Dist. LEXIS 13654, 2015 WL 506194, at *2 (D. Md. Feb. 5, 2015) (citing *Wyeth*, 252 F.R.D. at 297). The adequacy of the reason given for the change and the prejudice of striking the correction are also relevant in determining whether to strike a deponent's proposed changes. *Id.* The court is more likely to strike the proposed change if the reason provided is conclusory. *See id.*

*Ortiz v. Ben Strong Trucking, Inc.,* 624 F. Supp. 3d 567, 592 (D. Md. 2022).

CVS argues that the proposed change to Dr. Chhatre's deposition is material and impermissible, because it effectively revises Dr. Chhatre's expert testimony that a single injection caused Plaintiff's CRPS to an opinion that Pneumovax and Boostrix jointly contributed to the

12

CRPS. (ECF No. 37-1 at 5.) Plaintiff counters that the change merely clarifies and completes Dr. Chhatre's deposition testimony, and does not materially change the substance of his opinion. (ECF No 41 at 31.) Specifically, Plaintiff avers that, with the change, Dr. Chhatre's testimony would be:

> Q: Okay. She testified that those two vaccines were given at the same time in the same exact location, one after the other. How do you know that it wasn't the Boostrix vaccine that caused it?
>
> A: I couldn't – if the location was the exact same, through the exact same hole in the skin, then it would be difficult for me to tell. **If both shots were given in the same or similar, improper location, the pneumovax would have contributed to her injuries.**

*Id.* at 32; bold typeface shows errata sheet addition.

In order for the court to determine whether the errata sheet is permissible as a clarification/completion of the expert's testimony, the court reviews the larger framework and context of the witness' testimony on the contested subject. Here, the follow-up question is helpful.

> Q. What if they were given slightly apart would you be able to tell which needle had caused the complex regional pain syndrome?
>
> A. Yes. Whichever one was the site of which there was the focus of residual pain and redness. I think you said she had it for a week or two weeks or something?

(Dr. Chhatre Dep. 71:22-72:6.) The original/uncorrected testimony coupled with Dr. Chhatre's testimony on follow up renders the proposed errata clarification internally inconsistent with the balance of Dr. Chhatre's testimony, and makes plain that it is not an expansion, clarification or completion of Dr. Chhatre's testimony— rather it effects a wholesale, substantive change that materially affects the legal impact of the record on causation. Dr. Chhatre testified: 1) if the vaccines were administered in the same hole, he is unable to determine which one caused the harm; 2) if the vaccines were injected slightly apart, the vaccine site that produced residual pain and

13

redness was the cause of the harm. Under neither scenario does Dr. Chhatre opine that both Pneumovax and Boostrix were causation agents of the harm.

With the proposed errata correction, Dr. Chhatre opines that Pneumovax was a substantial contributing factor of the harm, which necessarily implies that both vaccines were a cause of harm (or, at the very least, that Pneumovax and some other agent or agents were causes of the harm). This is not the record evidence; to the contrary, when given an opportunity to opine that both vaccines contributed to Plaintiff's harm, Dr. Chhatre's testimony expressly allows that only "one" was the cause. (Dr. Chhatre Dep. 72:3-6 and 73:19-20.) The proposed errata sheet correction does "not clarify but materially changes the answers" and therefore reflects "lawyerly fixing of potentially problematic testimony." *Harden v. Wicomico Cty.,* 263 F.R.D. 304, 308 (D. Md. 2009) (quoting *Wyeth v. Lupin, Ltd.,* 252 F.R.D. 295, 297 (D. Md. 2008)). Accordingly, the Errata Motion is granted and the proposed change to Dr. Chhatre's deposition testimony is stricken.

## II.  MOTION FOR SUMMARY JUDGMENT

CVS argues that because neither Plaintiff's standard of care expert nor her causation expert has identified which of the two vaccines (Pneumovax or Boostrix) caused Plaintiff to develop CRPS, Plaintiff cannot prove medical causation. CVS argues, therefore, that it is entitled to summary judgment on Plaintiff's sole negligence claim. (ECF No. 36-1 at 2.)

The elements of negligence are well established in Maryland.[2] "First, the defendant must be under a duty to protect the plaintiff from injury. Second, the defendant must fail to discharge

---

[2] The parties do not dispute that Maryland law applies to this action. A federal district court sitting in diversity applies the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). The substantive law of the forum state includes its choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Maryland courts ordinarily apply the tort law of the place where the tort occurred under the doctrine of *lex loci delicti*. *Sherrod v. Achir,* 149 Md. App. 640, 647 (2003). In the present case, the alleged tort occurred at a Maryland CVS. (ECF No. 4, ¶ 8.) Therefore, Maryland law applies.

that duty.[3]  Third, the plaintiff must suffer actual loss or injury proximately resulting from that failure." *Lamb v. Hopkins*, 303 Md. 236, 241 (1985).  "[I]n order to be found negligent, the negligence of the individual(s) must be a proximate cause of the alleged harm." *Copsey v. Park*, 453 Md. 141, 164 (2017) (citing *Stone v. Chicago Title Ins. Co. of Md.*, 330 Md. 329, 337 (1993)).

> Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. Thus, although an injury might not have occurred "but for" an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury.

*Peterson v. Underwood*, 258 Md. 9, 16 (1970).

CVS argues that because the only negligent act Plaintiff alleges is the improper administration of Pneumovax, "substantial factor" causation is inapplicable and Plaintiff must demonstrate administration of Pneumovax is the "but for" cause of her harm, which it cannot do in view of Dr. Chhatre's testimony.  (ECF No. 36-1 at 15.)  Plaintiff counters that causation may be, and can be, satisfied through the substantial factor test.  (ECF No. 41 at 14.)  Plaintiff further argues that CVS is not entitled to summary judgment because there are genuine disputes of material fact as to causation.  *Id.* at 19.  Finally, Plaintiff argues that CVS cannot escape liability by claiming that it was either Pneumovax or the Boostrix that caused Plaintiff's injuries.

---

[3] Plaintiff asserts that material disputes of fact exist as to whether the pharmacist breached the standard of care when she injected Plaintiff with the vaccines. (ECF No. 41 at 13.) Specifically, Plaintiff avers that because the parties agree that no properly trained pharmacist would inject two vaccines below the deltoid and in the same location, coupled with evidence that the pharmacist did just that, a jury could reasonably find the pharmacist breached the standard of care when she administered Pneumovax and Boostrix to Plaintiff. *Id.* at 14. Defendant does not move for summary judgment on the basis of standard of care; therefore, the court does not address this issue.

### *"But for" and "Substantial Factor" Causation*

In *Pittway Corp. v. Collins,* the Supreme Court of Maryland held that in order to be a proximate cause of an injury, the alleged negligence must be (1) a cause in fact; and (2) a legally cognizable cause. *Pittway Corp. v. Collins*, 409 Md. 218, 243-45 (2009). "Cause-in-fact involves an inquiry of whether a defendant's actions actually produced an injury." *Copsey,* 453 Md. at 164 (citing *Pittway*, 409 Md. at 244). Under Maryland law, there are two tests to "determine if causation in fact has been met: (1) the 'but for' test, which applies when 'only one negligent act is at issue' and 'the injury would not have occurred absent or 'but for' the defendant's negligent act,' and (2) the 'substantial factor' test, which applies when 'it is more likely than not" that the defendant's negligent conduct was a substantial factor in bringing about the injury." *Suesse v. Luecke,* 2019 Md. App. LEXIS 616 at *26-27 (Jul. 25, 2019) (quoting *Pittway Corp.*, 409 Md. at 244.) Maryland courts have "adopted the substantial factor test from the Restatement (Second) of Torts." *Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 208 (1992).

> Section 431 of the Restatement (Second) of Torts provides:
>
>> The actor's negligent conduct is a legal cause of harm to another if
>> (a) his conduct is a substantial factor in bringing about the harm, and
>> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

RESTATEMENT (SECOND) OF TORTS § 431.

Although Plaintiff sues only for improper administration of Pneumovax, Plaintiff now seeks to rely upon the Boostrix vaccine as a second, separate negligent act warranting application of "substantial factor" causation. The Appellate Court of Maryland in *Mayer v. North Arundel Hosp. Ass'n, Inc.,* explained when application of the substantial factor causation is appropriate:

> Substantial factor causation primarily addresses the situation where independent causes produce an injury that would have occurred as a result of each cause alone. [*Yonce v. SmithKline Beecham Clinical*

> *Labs*, *Inc.,* 111 Md. App. 124, 138 (1996).] If we assume multiple acts of negligence, there was evidence that each act was a substantial factor in producing some injury . . . . The substantial factor test answers the question whether a defendant caused any injury. In certain situations, . . . the question remains as to what injury was caused by each act of negligence.

*Mayer v. North Arundel Hosp. Ass'n, Inc.,* 145 Md. App. 235, 246 (2002).

The case of *Moore v. Myers* provides helpful illustration of these principles at work. There, a twelve-year-old girl was struck by a car while fleeing a neighbor's advancing dog. *Moore v. Myers,* 161 Md. App. 349, 358 (2005). The neighbor's fifteen-year-old son was with the dog at the time of the incident and allegedly prompted the dog to chase the girl. *Id.* The girl's mother sued the driver of the car, the owners of the dog, and the son. *Id.* The case went to trial and, at the conclusion of testimony, the judge granted judgment in favor of the owners of the dog and their son. *Id.* at 361-62. The only question submitted to the jury was the driver's negligence. *Id.* at 362.

The Appellate Court of Maryland found that the trial court erred and that sufficient evidence had been produced at trial on which the jury could have concluded that the son breached a duty of care to the girl. 161 Md. App. at 376. Specifically, the court found, "[a] reasonable child of [the son]'s age, experience, and intelligence, should have known that prompting his unleashed pit bull to pursue a group of girls constituted an unreasonable risk of harm to them in general, and to [the twelve-year-old girl] in particular. *Id.* The court determined that there was enough evidence to establish causation by way of the "but for" or "substantial factor" tests. *Id.* at 377. The *Moore* court began its analysis by highlighting the differences between the two tests:

> "Causation in fact raises the threshold question of 'whether the defendant's conduct actually produced the injury.'" [*Wankel v. A & B Contractors*, *Inc.,* 127 Md. App. 128, 158 (1999)] (citing *Peterson v. Underwood*, 258 Md. 9, 16–17 (1970)). In determining whether cause in fact exists, we apply either the "but for" test or the

17

"substantial factor" test. *Wankel*, 127 Md. App. at 158. In *Wankel*, we outlined the differences between the two:

> By its very nature, the "but for" test applies when the injury would not have occurred in the absence of the defendant's negligent act. The "but for" test does not resolve situations in which two independent causes concur to bring about an injury, and either cause, standing alone, would have wrought the identical harm. The "substantial factor" test was created to meet this need but has been used frequently in other situations.

*Moore,* 161 Md. App. at 376 (citation omitted).

The *Moore* court then reasoned:

> [The twelve-year-old girl]'s testimony provided evidence from which the jury could have reasonably found that [the son]'s actions were both the cause in fact and the legal cause of [the girl]'s injuries under either the "but for" or the "substantial factor test." [The son]'s conduct was a substantial factor in bringing about [the girl]'s injuries and, but for that conduct, [the girl] would not have been injured. [The girl] testified that, after prompting from [the son], the dog began barking and started towards her. Frightened, she dashed away from the dog and into the street, where she was hit by [the driver]'s car.

Under the guidance of *Mayer* and *Moore,* the court now addresses whether "substantial factor" causation is applicable under the circumstances of this action. Based on Plaintiff's causation expert's testimony, only one act of negligence led to the harm. This case is, therefore, materially distinguishable from *Moore* where multiple causes concurred to produce a harm (the dog chasing the girl and the car striking the girl). Here, Plaintiff's substantial factor argument hinges on her position that the administration of both Boostrix and Pneumovax violated the standard of care. Even assuming this to be the case, the evidence in the record is that only one vaccine caused Plaintiff's injury; Plaintiff has pointed to no record evidence to generate a dispute

18

of fact as to the existence of more than one agent or cause of the harm.  Said differently, the evidence in the record does not support a finding that both shots concurred to bring about Plaintiff's CRPS, or that either cause, standing alone, would have "wrought the identical harm."  Instead, even if Boostrix and Pneumovax were both administered improperly, the evidence allows that only one led to Plaintiff's injury – whichever produced Plaintiff's inflamed injection site.  Therefore, "but for" causation is applicable in this instance; "substantial factor" causation is not.

Plaintiff urges that had she alleged Boostrix was a cause of her injury, her case would have been dismissed because Boostrix is immune to civil suit pursuant to federal law. (ECF No. 41 at 18.)  According to Plaintiff, Defendant may not use the fact that Boostrix is immune from civil suit as a shield from liability for improper administration of Pneumovax.  *Id.*  Plaintiff does not squarely address the evidence in the record – which is not that both vaccines caused or contributed to Plaintiff's harm.  Instead, when asked whether Boostrix or Pneumovax caused Plaintiff to develop CRPS, Plaintiff's expert, Dr. Chhatre, testified that if the vaccines were administered in the same location, he would not be able to tell which one caused the harm.  (Dr. Chhatre Dep. 71:14-21.)  When asked if he could tell which injection caused the CRPS if the shots were given slightly apart, Dr. Chhatre testified that, if the vaccines were administered slightly apart, the cause of the CRPS would be indicated by the injection site that resulted in Plaintiff's residual pain, redness, warmth and swelling. (Dr. Chhatre Dep. 71:17-72:6 and 73:13-20.)  Plaintiff has adduced no evidence to suggest which vaccine produced the inflammation at the injection site.  In essence, the jury would be asked to guess.

Dr. Chhatre's deposition testimony demonstrates that it was not "two independent causes concur[ring])" to bring about Plaintiff's alleged harm. *Moore,* 161 Md. App. at 376.  Rather it was either the injection of Pneumovax or the injection of Boostrix that caused Plaintiff's harm.  The

fact that Plaintiff cannot identify which injection site had the symptoms Dr. Chhatre testified to does not allow Plaintiff to attribute causation to Pneumovax.  The Maryland Civil Pattern Jury Instructions relied upon by Plaintiff further impair her argument that substantial factor causation is applicable in this case.  The Maryland Civil Pattern Jury Instruction on causation provides:

> For the plaintiff to recover damages, the plaintiff's injuries must result from and be a reasonable foreseeable consequence of the defendant's negligence. [There may be more than one cause of an injury, that is, several negligent acts may work together to cause the injury.  Each person whose negligent act is a substantial factor in causing an injury is responsible.]

MPJI-CV 19:10 Definition.  The Comments to the Instruction explain that the bracketed section of the instruction should be given where there is evidence that two or more independent negligent causes may have brought about the alleged injury and either cause standing alone would have resulted in the identical harm.  *Id.* at Comment A. Procedure (citing *Yonce v. SmithKline Beecham Clinical Labs., Inc.,* 111 Md. App. 124, 138 (1996)).

But-for causation is the appropriate method for establishing causation when there is only one negligent act that caused the harm.  Here, that negligent act is either improper administration of Boostrix or improper administration of Pneumovax, but not both.  Because Plaintiff cannot demonstrate which negligent act caused her harm, the Motion will be granted.

## CONCLUSION

For the reasons set forth herein, by accompanying order, the Errata Motion is granted and the Motion is granted.  Judgment shall be entered in favor of Defendant.

_____/S/_____
Julie R. Rubin
United States District Judge